**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**KIEL HOWLAND,**

  Plaintiff,

vs.            CASE NO: 17-CV
               HON.:

**NICHOLAS DARLINGTON a/k/a JACKSON NICHOLS,**
**HEATHER LASS f/k/a HEATHER JOHNSTON a/k/a ANDREA COMLIN,**
**in their individual and official capacities,**
**and DAVID GILBERT, in his individual and official capacity.**

  Defendants

| |
|---|
| CHRISTOPHER TRAINOR & ASSOCIATES |
| CHRISTOPHER J. TRAINOR (P42449) |
| AMY J. DEROUIN (P70514) |
| Attorneys for Plaintiff |
| 9750 Highland Road |
| White Lake, MI 48386 |
| (248) 886-8650 |
| (248) 698-3321-fax |
| amy.derouin@cjtrainor.com |

THERE IS NO OTHER PENDING OR RESOLVED CIVIL ACTION ARISING OUT OF THE TRANSACTION
OR OCCURRENCE ALLEGED IN THE COMPLAINT

## COMPLAINT AND JURY DEMAND

  NOW COMES Plaintiff, **KIEL HOWLAND**, by and through his attorneys,

CHRISTOPHER TRAINOR & ASSOCIATES, and for his Complaint against the above-named

Defendants, states as follows:

1. Plaintiff is a resident of the Village of Augusta, County of Kalamazoo, State of

  Michigan and at all times relevant to this action was a resident of the City of Portage,

  County of Kalamazoo, State of Michigan.

2. Defendant **NICHOLAS DARLINGTON** a/k/a JACKSON NICHOLS, at all times

  relevant herein, was a detective with the Michigan State Police and was assigned as a

1

narcotics investigator for the Southwest Enforcement Team ("SWET"), and was acting under color of law, within the course and scope of his employment, and within his individual and official capacities.

3.    Defendant **HEATHER LASS**, f/n/a **HEATHER JOHSTON** a/k/a ANDREA COMLIN  at all times relevant herein, was assigned to SWET and worked as an undercover officer, among other things, and was acting under color of law, within the course and scope of her employment, and within her individual and official capacities.

4.    Defendant **DAVID GILBERT**, at all times relevant herein, was the Calhoun County prosecutor and was acting under color of law, in his individual capacity.

5.    All events giving rise to this lawsuit occurred in the Counties of Calhoun and Kalamazoo in the State of Michigan.

6.    Jurisdiction is vested in this Court pursuant to 28 U.S.C. §1331 [federal question], and 28 U.S.C. §1343 [civil rights].

7.    This lawsuit arises out of Defendants' violations of Plaintiff's federal constitutional rights as secured by the Fourth and Fourteenth Amendments to the United States Constitution, consequently, Plaintiff has viable claims for damages under 42 U.S.C. § 1983.  Plaintiff also has viable state law claims.

8.    The amount in controversy exceeds Seventy-five Thousand Dollars ($75,000.00) not including interest, costs, and attorney fees.

## **FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS**

9.    Plaintiff realleges and incorporates by reference each and every allegation contained in the Complaint as if fully set forth herein.

10.     In 2008, the *Michigan Medical Marihuana Act* ("MMMA") was enacted by a voter initiative which, among other things, allowed the medical use of marihuana under Michigan law to the extent that it was carried out in accordance with the provisions of the *MMMA* and provided for a registration process through the State of Michigan for "qualifying patients" and "primary caregivers." *MCL 333.26423, MCL 333.26427(a).*

11.     Under this registration process, a qualifying patient who submits the necessary paperwork and information will be issued a Michigan Medical Marihuana registry identification card through the Michigan Department of Community Health ("MDCH"). *MCL 333.26423.*

12.     Under the MMMA, if the MDCH approves the qualifying patient's application and the qualifying patient has identified a primary caregiver, the MDCH shall also issue a registry identification card to the primary caregiver. *MCL 333.26423.*

13.     Under the MMMA, a primary caregiver or a registered patient in compliance with the requirements of the MMMA, is immune from arrest and prosecution. *MCL 333.26423.*

14.     Plaintiff applied for and received a Michigan Medical Marihuana registry identification card which remained valid at all times relevant herein.

15.     Plaintiff was the primary caregiver for no more than 5 qualifying patients at all times relevant herein.

16.     After the MMMA was enacted into law, the City of Springfield's City Council and its Planning Commission held meetings in which the opening and operating of medical marihuana businesses within the city limits were addressed and Plaintiff attended and addressed the members on at least one such occasion regarding the MMMA and/or medical marihuana.

3

17.    On or about June 6, 2011, after the business license ordinance and the zoning ordinance were amended to authorize medical marihuana businesses, Plaintiff applied for a license for a medical marihuana business in the City of Springfield and paid all requisite fees and said license was issued by the City on or about July 5, 2011 and Plaintiff timely renewed the business license and paid all required fees.

18.    Plaintiff was the registered agent for the business, The Karmacy, located at 4549 W. Dickman Rd. in Springfield, Michigan and this property was originally owned by Plaintiff's parents.

19.    After the Michigan Court of Appeals' decision in *People v. McQueen,* 293 Mich. App. 664 (2011), Plaintiff requested a meeting with the former Calhoun County Prosecutor Susan Mladenoff to resolve any issues relating to the lawful operation of The Karmacy in light of the *McQueen* decision and based on his discussions with Mladenoff, Plaintiff believed that The Karmacy was in compliance with the MMMA after *McQueen.*

20.    Upon information and belief, in December 2012, SWET received information pertaining to the alleged "distribution of marihuana" from The Karmacy.   Upon information and belief, SWET received no information that medical marihuana was being grown or transferred in violation of the MMMA

21.    Upon information and belief, Defendant **DARLINGTON** obtained a Michigan Driver's license and a social security number under the fictitious name Jackson Nichols which in order to obtain a doctor's certification for medical marihuana.

22.    Defendant **DARLINGTON a/k/a NICHOLS** used this fictitious identity and the doctor's certification for medical marihuana, along with a fake address, phone number and email address, to obtain a medical marihuana card from the State.

23.   Defendant **LASS a/k/a ANDREA COMLIN** used a fictitious name and identity, in an unrelated investigation, to obtain a medical certification for medical marihuana and then a medical marihuana card from the State.

24.   Defendants **DARLINGTON** and **LASS** used their respective fake identities and fraudulently obtained Michigan Medical Marihuana registry cards to obtain medical marijuana from The Karmacy between December 2012 and June 2013.

25.   After the Michigan Supreme Court rendered its decision in *State v. McQueen,* 493 Mich. 135 (2013), Plaintiff sent a letter to the new Calhoun County Prosecutor, Defendant **GILBERT**, requesting a meeting to ensure that The Karmacy was in full compliance with the law.

26.   Rather than meet with Plaintiff to discuss this matter, Defendant **GILBERT** sent a letter to Plaintiff and numerous city and county officials, including the Chief of Police for Springfield and the Calhoun County Sheriff, summarily stating that The Karmacy was violating state and federal law.

27.   Thereafter, Plaintiff's then attorney, Bruce Leach, responded to Defendant **GILBERT** explaining that The Karmacy is in full compliance with the MMMA and that his clients are protected under Section 4 immunity.

28.   Defendant **GILBERT** threatened to prosecute Plaintiff, even though there was no evidence that Plaintiff was in violation of the MMMA or that he was not entitled to immunity afforded to him by law.  Upon information and belief Defendant **GILBERT** directed an investigation of the Karmacy as well as acting as an investigator himself.

29.   Upon information and belief, during the "investigation", Defendants did not investigate:

   a.   whether Plaintiff had a valid Medical Marihuana registry card;

   b.   whether Plaintiff was a primary caregiver for registered patients under the MMMA

   c.   whether workers and/or employees at The Karmacy had a valid Medical Marihuana registry id card and/or were registered primary caregivers; and/or

   d.   the Ordinance enacted by the City of Springfield regarding a medical marihuana business and whether The Karmacy was in compliance with said Ordinance.

30.   Upon information and belief, Defendants, nor Defendant **GILBERT** ever contacted the City Manager, the City's attorney, anyone at City Council, and/or anyone at the City's police department regarding The Karmacy and whether it was in compliance with the MMMA prior to obtaining the herein-described search warrants and an arrest warrant for Plaintiff.

31.   While inside The Karmacy on the above-described occasions, Defendants **DARLINGTON** and **LASS**:

   a.   were provided a primary caregiver by The Karmacy and signed and completed the requisite paperwork for the State;

   b.   were never provided more medical marihuana than authorized under the MMMA;

   c.   did not see any live medical marihuana plants;

   d.   had no knowledge whether any live medical marihuana plants were on the premises of The Karmacy and whether or not said plants were kept in a locked facility as required under the MMMA;

   e.   had no information that any live plants, if in fact on the premises of The Karmacy, exceeded the number of medical marihuana plants authorized under the MMMA;

f. never observed medical marihuana being provided by The Karmacy to anyone who did not have a State issued Medical Marihuana registry identification card;

g. had no information that the medical marihuana provided to them at The Karmacy was provided by anyone other than his/her primary caregiver;

h. had no information that the amount of usable medical marihuana at The Karmacy exceeded the amount authorized by the MMMA;

i. had no contact with Plaintiff while inside The Karmacy and had only observed Plaintiff leaving the Karmacy on one occasion and observed his vehicle in the parking lot on another occasion.

32. Defendants did not observe any illegal drug related activity at The Karmacy when it was under surveillance.

33. Defendants did not observe any unlawful drug related activity at or inside Plaintiff's residence.

34. Defendants conducted surveillance of The Karmacy on December 12, 2012. Defendant **DARLINGTON** was working undercover.

35. Defendants conducted surveillance of The Karmacy on February 11, 2013.

36. Defendants conducted surveillance of The Karmacy on April 3, 2013. Defendant **LASS** was working undercover.

37. Defendants conducted surveillance of The Karmacy on April 4, 2013. Defendant **LASS** was working undercover.

38. Defendants conducted surveillance of The Karmacy on April 30, 2013 and May 1, 2013. Defendant **DARLINGTON** was working undercover.

39. Defendants conducted surveillance of The Karmacy on June 5, 2013. Defendant **DARLINGTON** was working undercover.

40. Defendants conducted surveillance of The Karmacy on June 11, 2013. Defendant **DARLINGTON** was working undercover.

41. Defendants conducted surveillance of The Karmacy on June 24, 2013. Defendant **DARLINGTON** was working undercover.

42. Defendants had no direct evidence, observation, or informant tip that any illegal drug activity was taking place at The Karmacy, Plaintiff's residence or Plaintiff's parents' residence.

43. Upon information and belief, on May 7, 2013, Defendant **DARLINGTON** completed an Affidavit for Search Warrant for the banking records of The Karmacy, LLC; Pure Medicine, LLC; Springfield Holdings, LLC; and of Plaintiff sworn before the Magistrate and executed on May 7, 2013.

44. Upon information and belief, on June 25, 2013, Defendant **DARLINGTON** completed a separate Affidavit for Search Warrant for The Karmacy at 4549 W. Dickman Rd. in Springfield, Michigan; for Plaintiff's residence at 930 Romance Rd. in Portage, Michigan; for Plaintiff's parents' residence on W. Baseline Rd; and for Springfield City Hall and swore out before the Magistrate then signed by the Magistrate. Upon information and belief, these search warrants were executed on June 26, 2013.

45. Upon information and belief, Defendant **GILBERT** acted as an investigator and directed and was present at and/or participated in at least one of the above-described searches.

46. Defendants were part of the team that executed search warrants at Plaintiff's residence, 930 Romance Rd.; at The Karmacy, 4549 W. Dickman Rd. in Springfield, Michigan; or at Plaintiff's banks and/or at Springfield City Hall.

47. Defendants did not have probable cause to either have issued or execute the above described search warrants.

48. Numerous items were unlawfully seized as a result of the above-described search warrants including the cremated remains of Plaintiff's grandparents.

49. As a result of these unlawful seizures, Defendants obtained search warrants on July 1, 2013 for a black Lenovo laptop and an Acer computer and on July 2, 2013 for bank records from Fifth Third Bank and JP Morgan Chase. Upon information and belief, Defendants executed these search warrants.

50. Upon information and belief, Defendant **DARLINGTON** and/or other Defendants applied, and/or sought an arrest warrant for Plaintiff's arrest.

51. On or about March 13, 2014, Plaintiff was charged in a Felony Complaint with: Controlled Substance/Delivery Manufacture Marihuana (possession with intent to deliver 5 kilograms to 45 kilograms and 20 to 200 plants) in violation of MCl 333.7401(2)9d)(iii) (Count I); conspiracy of Possession with Intent to Deliver Marijuana in violation of MCL 333.7401(2)(d)(iii) (Count II); and Controlled substance-Delivery/Manufacture (possession with intent to deliver 5 kilograms to 45 kilograms and 20 to 200 plants) in violation of MCL 333. 7401(2)(d)(iii) Count III).

52. As a result of obtaining unlawfully seized evidence, on or about October 14, 2013, Defendant **GILBERT** wrongfully instituted forfeiture proceedings entitled *People of the State of Michigan v. In Re Omni Bank Account,* File number 13-1979, seeking the

forfeiture of the items unlawfully seized during the execution of the above-described search warrants and a stipulation for Consent Judgment of Forfeiture was executed by Plaintiff on or about November 20, 2014.  The proceeds from the wrongfully forfeited items went directly into the SWET coffers.

53.   Upon information and belief, Defendants actions against Plaintiff were motivated in part by the money to be made through forfeiture.

54.   Upon information and belief, Defendants actions against Plaintiff were motivated in part by Defendants displeasure with the initiative enacted by the people in the State of Michigan authorizing the medical use of marihuana in specifically enumerated situations.

55.   The Preliminary Examination occurred over the following four days:  December 3, 2015; February 8, 2016; March 29, 2016; and August 3, 2016.

56.   On January 20, 2017 the Calhoun County District Court entered its Order dismissing all charges against Plaintiff and Brett Mumy.  In its Order, the Court specifically found:

a.   There was no proof that the caregiver did or did not put the marihuana in the individual lockers;

b.   There was no proof that the weight of the marihuana seized or the number of growing plants exceeded the number of patients and caregivers listed and identified;

c.   There was no proof that the money received by the caregivers was not for the covering of expenses and there was no showing that The Karmacy was operating for profit;

d.    There was no direct evidence connecting Brett Mumy to the charges and that the charges against Plaintiff are even more remote; and

e.   That assumptions do not give rise to probable cause and that maybe does not give rise to probability.

57.   At all times relevant hereto, Plaintiff was in clear and unambiguous compliance with state laws.

58.   That Defendants actions have violated Plaintiff's rights as set forth in the United States Constitution and subsequently Plaintiff has a claim for damages as allowed and set forth in 42 U.S.C § 1983.

<div align="center">

**COUNT I**
**VIOLATION OF THE FOURTH AMENDMENT**
**42 U.S.C. § 1983 UNLAWFUL SEARCH AND SEIZURE**
**WITHOUT PROBABLE CAUSE AGAINST ALL INDIVIDUAL**
**DEFENDANTS**

</div>

59.   Plaintiff realleges and incorporates by reference each and every allegation contained in the Complaint as if fully set forth herein.

60.   The Fourth Amendment to the United States Constitution establishes that Plaintiff has the right to be free from the deprivation of life, liberty, and bodily security without due process of law and to be free from unreasonable searches and seizures.

61.   Each Defendant is a "person" as used under 42 U.S.C. § 1983.

62.   At all relevant times, Defendants, acted under color of law and acted unreasonably when they violated Plaintiff's Fourth Amendment rights.

63.    Defendants did not have a substantial basis for inferring a fair probability that evidence of a crime existed in the places identified in the above-described search warrants.

64.   The above-described affidavits and search warrants failed to establish the requisite nexus between the place to be search and the evidence sought.

65.     Defendants did not have reasonable cause to believe that the things to be searched for and seized were located on the various properties where entry was sought.

66.     Defendants had no evidence that Plaintiff or The Karmacy, at any time, had ever violated the provisions of the MMMA.

67.     Defendants had no evidence to rebut the presumption of immunity that Section 4 of the MMMA afforded to Plaintiff.

68.     Defendants had no facts, by direct surveillance or informant testimony, establishing a fair probability that evidence was drug trafficking would be found at Plaintiff's bank, at The Karmacy, at Plaintiff's residence or at Plaintiff's parent's house.

69.     Defendants' actions constituted an unreasonable governmental intrusion into Plaintiff's home and business.

70.     Defendants acted unreasonably and failed in their duty when they took an active role in applying for and in conducting unlawful searches and seizures without considering the totality of the circumstances and ignoring evidence.

71.     Defendants lacked probable cause for the issuance and execution of the above-described search warrants and/or manufactured probable cause, lied and/or omitted material facts in order to ensure that the above-described search warrants would be issued and executed.

72.     Defendants acted knowingly and intentionally or with reckless disregard of the truth.

73.     Defendant **GILBERT** is not entitled to absolute immunity as his unlawful actions occurred solely during the investigative process in this matter and prior to any judicial proceedings.

74. Defendants are not entitled to qualified immunity because they violated Plaintiff's clearly established Fourth Amendment right to be free from unreasonable searches and seizures.

75. Defendants' illegal and unconstitutional acts were the direct and proximate result of Plaintiff's deprivation of his constitutional rights.

**WHEREFORE,** Plaintiff respectfully requests that this Honorable Court enter an award in his favor and against Defendants in an amount in excess of Seventy-five thousand Dollars ($75,000.00) exclusive of interest, costs and attorney fees, punitive, compensatory and exemplary damages for injuries so wrongfully incurred together with any and all other relief Plaintiff may be entitled to in law and in equity.

<u>**COUNT II**</u>
<u>**VIOLATION OF THE FOURTH AMENDMENT**</u>
<u>**42 U.S.C. § 1983 UNLAWFUL ARREST**</u>
<u>**WITHOUT PROBABLE CAUSE AGAINST DEFENDANTS**</u>

76. Plaintiff realleges and incorporates by reference each and every allegation contained in the Complaint as if fully set forth herein.

77. Defendants did not have probable cause for the application of and issuance of an arrest warrant for Plaintiff.

78. Defendants did not have reasonably trustworthy information sufficient to warrant a prudent person into believing that Plaintiff had committed the crimes of possession with intent to deliver or conspiracy.

79. Defendants knowingly and deliberately or with reckless disregard for the truth made false statements or omissions that created a falsehood and such statements or omissions were material or necessary to the finding of probable cause for the issuance of the arrest warrant.

80.     The Affidavits and Complaint did not address that these Defendants had no direct evidence or informant testimony that Plaintiff engaged in the unlawful activity for which he was charged.

81.     Plaintiff was entitled to immunity from arrest and prosecution under the MMMA and these Defendants proffered no evidence to rebut this presumption of immunity.

82.     That as a result of the unlawful arrest warrants being issued, Plaintiff was detained and arraigned.

83.     These Defendants did not have probable cause to seek an arrest warrant for Plaintiff and sought the prosecution of an innocent person which is patently unconstitutional.

84.     Defendant **GILBERT** is not entitled to absolute immunity as his unlawful actions occurred during the investigative stage and not the judicial stage.

85.     Defendants are not entitled to qualified immunity because they violated Plaintiff's clearly established Fourth Amendment right to be free from unlawful arrest.

86.     These Defendants' illegal and unconstitutional acts were the direct and proximate result of Plaintiff's deprivation of his constitutional rights.

**WHEREFORE,** Plaintiff respectfully requests that this Honorable Court enter an award in his favor and against Defendants in an amount in excess of Seventy-five thousand Dollars ($75,000.00) exclusive of interest, costs and attorney fees.

**COUNT III**
**VIOLATION OF THE FOURTH AMENDMENT**
**42 U.S.C. § 1983 MALICIOUS PROSECUTION**
**AGAINST THE INDIVIDUALLY NAMED DEFENDANTS**

87.     Plaintiff realleges and incorporates by reference each and every allegation contained in the Complaint as if fully set forth herein.

88.   Each Defendant is a person as used under 42 U.S.C. § 1983.

89.   The right to be free from malicious prosecution is a right clearly established under the Fourth Amendment.

90.   Malicious prosecution constitutes a separate constitutionally cognizable claim under the Fourth Amendment.

91.   The Defendants failed to properly and thoroughly investigate whether or not Plaintiff was in compliance with the MMMA.

92.   The Defendants manufactured probable cause, lied, omitted material and/or exculpatory evidence and wrongfully and unlawfully initiated and continued criminal proceedings against Plaintiff.

93.   The Defendants had no actual knowledge or probable cause to believe that Plaintiff was not in compliance with or had violated the MMMA.

94.   The Defendants had no actual knowledge or probable cause to believe that Plaintiff was not entitled to immunity from arrest or prosecution under the MMMA.

95.   The Defendants had no actual knowledge or probable cause that Plaintiff was illegally in possession of marihuana and conspired to possess marihuana in violation of MCL 333. 7401(2)(d)(iii).

96.   The Defendants made false statements and/or wilfully concealing exculpatory facts causing the issuance of an arrest warrant to be issued against Plaintiff.

97.   The Defendants acted unreasonably and maliciously when they caused criminal proceedings to be initiated and continued against Plaintiff.

98.     The Defendants knew that they falsely and recklessly built a bogus case against Plaintiff and this exemplifies their callous indifference to Plaintiff's life and liberty interests.

99.     The Defendants failed and/or refused to dismiss the charges against Plaintiff even though they had an abundance of exculpatory evidence in their possession which clearly showed that Plaintiff was not in violation of any laws and/or that the MMMA afforded him immunity from arrest and prosecution.

100.    The criminal prosecution terminated in Plaintiff's favor when the district court failed to bind over Plaintiff and dismissed all charges for lack of probable cause.

101.    The criminal prosecution of Plaintiff was undertaken with malice or a purpose in instituting the criminal claim other than bringing an offender to justice.

102.    The Defendants actions were the direct and proximate cause of Plaintiff's wrongful and unlawful prosecution which violated his Fourth Amendment rights.

**WHEREFORE,** Plaintiff respectfully requests that this Honorable Court enter an award in his favor and against Defendants in an amount in excess of Seventy-five thousand Dollars ($75,000.00) exclusive of interest, costs and attorney fees.

### COUNT IV
### 42 U.S.C. § 1983
### VIOLATION OF THE FIRST AMENDMENT

103.    Plaintiff realleges and incorporates by reference each and every allegation contained in the Complaint as if fully set forth herein.

104.    Each Defendant is a person as used under 42 U.S.C. § 1983.

105.    Plaintiff exercised his First Amendment right of freedom of speech when he spoke publicly and politically about the MMMA, medical marihuana and medical marihuana

businesses and/or aided the City of Springfield in passing ordinances regarding licensing medical marihuana businesses within the city's limits.

106. Plaintiff further exercised his First Amendment right of freedom of speech when he sent a letter to Defendant **GILBERT** regarding the legality of The Karmacy under the MMMA.

107. These activities and speech by Plaintiff were protected under the First Amendment.

108. Defendant **GILBERT** initiated on a crusade against Plaintiff and The Karmacy seeking to close the business and prosecute Plaintiff.

109. Upon information and belief, Defendant **GILBERT** instructed the other Defendants to investigate Plaintiff for illegal drug activities, even though neither Defendant **GILBERT** nor the other named Defendants had any evidence of the same.

110. This adverse action against Plaintiff by the Defendants were designed to silence Plaintiff and would deter a person of ordinary firmness from continuing to speak out in favor of licensed medical marihuana businesses and the use of medical marihuana.

111. There was a causal connection between Plaintiff's speech and the adverse action taken Plaintiff.

112. The adverse action was motivated in part by Plaintiff's protected speech and conduct.

113. The adverse action was in retaliation for Plaintiff's engaging in protected speech.

114. As a result of the conduct complained of herein, Plaintiff suffered deprivation of clearly established rights protected and secured by the United States Constitution including his right to free speech and his right to be free from retaliation for exercising his right to free speech.

115.    As a direct and proximate result of the Defendants actions, Plaintiff has suffered and will continue to suffer damages.

**WHEREFORE,** Plaintiff respectfully requests that this Honorable Court enter an award in his favor and against Defendants in an amount in excess of Seventy-five thousand Dollars ($75,000.00) exclusive of interest, costs and attorney fees.

<u>**COUNT V**</u>
<u>**VIOLATION OF THE FOURTEENTH AMENDMENT**</u>
<u>**SUBSTANTIVE DUE PROCESS**</u>

116.    Plaintiff realleges and incorporates by reference each and every allegation contained in the Complaint as if fully set forth herein.

117.    Plaintiff has a right to be free from unreasonable interference in his business affairs.

118.    The right to substantive due process means that those individuals authorized by the People of the State of Michigan and/or by the Michigan legislature to have the right to use medical marihuana without the risk of arrest or prosecution without unreasonable government interference by those individuals who disagree with duly enacted laws.

119.    When a State has expressly permitted a certain class of its citizens to use medical marihuana based on a duly licensed doctor's recommendation, there is a fundamental right to such use free from unreasonable governmental interference.

120.    By reason of the Defendants unlawful acts, practices and omissions, Plaintiff has suffered monetary damages, humiliation, mental anguish, emotional pain and suffering, physical and emotional distress, loss and enjoyment of life, and non-pecuniary losses, among other things.

**WHEREFORE,** Plaintiff respectfully requests that this Honorable Court enter an award in his favor and against Defendants in an amount in excess of Seventy-five thousand Dollars ($75,000.00) exclusive of interest, costs and attorney fees.

<u>**COUNT VI**</u>
<u>**42 U.S.C. § 1983**</u>
<u>**CIVIL CONSPIRACY**</u>

121.   Plaintiff realleges and incorporates by reference each and every allegation contained in the Complaint as if fully set forth herein.

122.   Defendants together with unknown and unidentified individuals involved with or working with SWET, including but not limited to all of the Defendants entered into an agreement or single plan to wrongfully harass, arrest, prosecute and violate Plaintiff's civil rights in violation of 42 U.S.C. § 1985.

123.   The investigation of The Karmacy and Plaintiff, the above-described unlawful searches and seizures, the wrongfully initiated forfeiture action, the unlawful arrest of Plaintiff and the wrongful prosecution of Plaintiff were all acts in furtherance of this conspiracy.

124.   This conspiracy was motivated in part by these Defendants desire to obtain the proceeds from the forfeiture proceedings, the desire to make a name for themselves in the law enforcement and legal communities, and/or their disapproval of the initiative of the People of the State of Michigan.

125.   As a result of this unlawful conspiracy Plaintiff has suffered and will continue to suffer damages.

126.   Pursuant to 42 U.S.C. §1983, Plaintiff respectfully requests this Honorable Court to award exemplary, compensatory and punitive damages plus costs, interest, and attorney fees as set forth in 42 U.S.C. § 1988.

**WHEREFORE,** Plaintiff respectfully requests that this Honorable Court enter an award in his favor and against Defendants in an amount in excess of Seventy-five thousand Dollars ($75,000.00) exclusive of interest, costs and attorney fees.

Respectfully submitted,
CHRISTOPHER TRAINOR & ASSOCIATES

**s/Christopher J. Trainor**
CHRISTOPHER TRAINOR & ASSOCIATES
CHRISTOPHER J. TRAINOR (P42449)
AMY J. DEROUIN (P70514)
Attorneys for Plaintiff
9750 Highland Road
White Lake, MI  48386
(248) 886-8650
(248) 698-3321-fax
amy.derouin@cjtrainor.com

Dated: October 13, 2017
CJT/kab

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**KIEL HOWLAND,**

        Plaintiff,

vs.                                   CASE NO: 17-CV
                                     HON.:

**NICHOLAS DARLINGTON a/k/a JACKSON NICHOLS,**
**HEATHER LASS f/k/a HEATHER JOHNSTON a/k/a ANDREA COMLIN,**
**in their individual and official capacities,**
**and DAVID GILBERT, in his individual and official capacity.**

        Defendants

| | |
|---|---|
| CHRISTOPHER TRAINOR & ASSOCIATES<br>CHRISTOPHER J. TRAINOR (P42449)<br>AMY J. DEROUIN (P70514)<br>Attorneys for Plaintiff<br>9750 Highland Road<br>White Lake, MI  48386<br>(248) 886-8650<br>(248) 698-3321-fax<br>amy.derouin@cjtrainor.com | |

**PLAINTIFF'S DEMAND FOR JURY TRIAL**

21

**NOW COMES** Plaintiff, **KIEL HOWLAND,** by and through his attorneys, CHRISTOPHER TRAINOR & ASSOCIATES, and hereby makes a Demand for Trial by Jury in the above-captioned matter.

<div style="margin-left: 40%;">

Respectfully submitted,
CHRISTOPHER TRAINOR & ASSOCIATES

**s/Christopher J. Trainor**
CHRISTOPHER TRAINOR & ASSOCIATES
CHRISTOPHER J. TRAINOR (P42449)
AMY J. DEROUIN (P70514)
Attorneys for Plaintiff
9750 Highland Road
White Lake, MI 48386
(248) 886-8650
(248) 698-3321-fax
amy.derouin@cjtrainor.com

</div>

Dated: October 13, 2017
CJT/kab